**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO, LOCAL UNIONS 561, 562, 563, 564, 565, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 13 C 01415 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO, INTERNATIONAL, | ) ) ) ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

The plaintiffs, five locals of the Transport Workers Union whose membership consists of mechanics employed by American Airlines (the "Locals"), bring this action against their parent international organization, the Transport Workers Union ("TWU" or "International") to prevent the imminent implementation of a restructuring plan that will result in the dissolution of the Locals and the consolidation of their membership into a Single Line Local Union, as well as the placement of some Local 565's membership into another local. Before the Court is the Locals' motion for a temporary restraining order, which seeks to enjoin implementation of the restructuring plan until the parties and the Court can address the Locals' motion for a preliminary injunction. The Court conducted a hearing on the TRO motion on March 14, 2014, and concludes that the Locals have not established even a minimal likelihood of success on the merits of their claim that the International's restructuring plan violates its constitution. Accordingly, the Court denies the motion for a temporary restraining order.

## BACKGROUND

At the hearing, the Locals and the TWU agreed that the basic facts of this case, as established through the declarations and exhibits submitted by both parties, are not in dispute. Because the Court does not need to make any findings on disputed facts in order to rule on the TRO motion, and in the interest of providing this ruling to the parties expeditiously, it forgoes a lengthy recitation of the facts.

In summary, the TWU is the exclusive bargaining representative of mechanics employed by American Airlines. The international union negotiates and administers the collective bargaining agreement with the airline. Since 1999, when the membership participated in self-determination elections, the mechanics have been organized into local unions that are specific to their trade and grouped into regions. The plaintiff Locals 561-565 are based in cities in Florida, New York, Illinois, California, and Texas, respectively. They are among the eight TWU local unions consisting primarily of airport "line" mechanics, in contrast to mechanics who work perform "overhaul" work at American bases.

Two significant and related events provide the context for the current dispute: American Airlines entered Chapter 11 bankruptcy proceedings in 2011—resulting in modifications to its collective bargaining agreements with TWU—, and in February 2013 it announced a merger with U.S. Airways. Different TWU units negotiated different concessionary agreements with American; the Mechanics Unit agreed to eliminate the so-called "Baker letter" as it applied to mechanics. Pursuant to the Baker letter, since 1993 American had paid the local mechanic representatives' compensation for their union representative activities. As for the merger, if approved, it will require the consolidation of employees of the two airlines, including the mechanics, who are represented by two different unions (the International Association of

Machinists represents the US Airways mechanics). Faced with this prospect of elimination of the airline subsidy for Local union leadership and a decline in dues income resulting from the elimination of hundreds or thousands of mechanic positions—also attributable to airlines' purchasing of newer aircraft—the TWU concluded that the financial viability of the Locals was or would soon be in jeopardy, as was the locals' ability to continue the effective representation of the membership, especially against a possible threat of "raids" by other unions.

In October 2012, the TWU announced to the membership a "Line Local Reorganization," part of which prescribed that the Locals would be "merged" into a single local union to be known as Local 591, based in Dallas, Texas, where American Airlines is headquartered. In addition, the base overhaul mechanics in Local 565 would be merged into the base line mechanics' Local 567. The Locals and their members strongly opposed the merger and believed it would be detrimental to the effective representation of the membership; they submitted an "Appeal and Objection" to TWU and otherwise made their objections known. In late October, the IEC established a subcommittee to examine the issues raised by the restructuring proposal. The subcommittee's January 3 report and recommendation endorsed a plan similar to what had been proposed in October. On January 8, the TWU International Executive Council formally adopted a resolution implementing the proposed reorganization, to be effective on March 22, 2013. In support of the resolution, the IEC explicitly incorporated and relied on the interpretation of the TWU Constitution by the TWU International President, which sets forth the basis for the International's authority to restructure locals in the manner recommended by the IEC subcommittee.

On February 25, the Locals filed their complaint, which alleges that the TWU's reorganization plan, particularly the merger of the line mechanics into one "super-local," violates

3

the TWU Constitution and the international union's duty of fair representation. The lawsuit seeks to preliminarily and permanently enjoin implementation the reorganization plan. On March 5, the Locals moved for a temporary restraining order and a preliminary injunction. The parties submitted evidence on an expedited basis, and presented their arguments at the March 14 hearing.[1]

## DISCUSSION

### I.     Preliminary Issues

#### A.     Jurisdiction

The TWU argues—at least in its papers—that this Court lacks jurisdiction under the Norris-LaGuardia Act, 29 U.S.C. §§ 101-115, to enter an injunction in a "labor dispute," unless the statute's stringent standards are met. The Locals have not responded to the jurisdictional question, and the TWU did not press the issue at the TRO hearing, but the Court is independently obligated to consider its own jurisdiction. The Court concludes that it has jurisdiction.

The Norris-LaGuardia Act, which became effective in 1932, was conceived to prevent federal judges from enjoining strikes and other forms of legitimate collective action by workers. *See generally Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 715-718 (1982). *See also* 29 U.S.C. § 102 (enacting "definitions of and limitations upon the jurisdiction and authority of the courts of the United States" to ensure that workers "have full

---

[1] Given the participation of both parties, including the submission of evidence, and the parties' understanding that little, if any, further evidence will be submitted before a preliminary injunction can be entered, this is hardly the typical TRO, the essence of which is "its brevity, its ex parte character, and (related to the second element) its informality." *See Geneva Assur. Syndicate, Inc. v. Medical Emergency Services Associates (MESA) S.C.* 964 F.2d 599, 600 (7th Cir. 1992). "A TRO issued after notice, especially if there is a hearing, is procedurally as well as functionally even more like a preliminary injunction than a TRO issued without notice and hearing." *Chicago United Induss. v. City of Chicago*, 445 F.3d 940, 946 (7th Cir. 2006). However, plaintiffs specifically requested the opportunity to submit further argument in support of its request for preliminary injunction.

freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."). It is difficult to conceive how this intra-union dispute implicates the concern that judges will improvidently use injunctions to restrain collective activity out of hostility for labor.

This case implicates the practicalities of how a union will organize and govern its members; that is an internal matter that does not implicate any "labor dispute"—that is, "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 113. The union's collective bargaining agreement—which is negotiated and administered by the International, not the Locals—is not implicated here, nor are the members' terms or conditions of employment. A restructuring of local unions, even one that involves the dissolution of some, is unlike any of the labor activities that the Norris-LaGuardia Act restricts the courts from enjoining. *See* 29 U.S.C. § 104. Various courts have held that intra-union disputes similar to this one do not trigger application of the Norris-LaGaurdia Act. *See, e.g., Parks v. Int'l Bhd. of Elec. Workers*, 314 F.2d 886 (4th Cir. 1963) (Act should not be applied to local union's dispute with international union, "when manifestly the matter here enjoined was not a part and parcel of the abuses against which the Act was aimed"); *Smith v. Bowers*, 337 F. Supp. 2d 576 (S.D.N.Y. 2004) (Act did not apply to preliminary injunction action by union members against union, seeking to enjoin enforcement

of labor contract because the union conducted ratification vote unlawfully); *Tisa v. Potofsky*, 90 F. Supp. 175, 179 (S.D.N.Y. 1950) (A "suit to prevent the directors of a labor organization from taking certain action against a member organization" is "not a 'labor dispute'"); *Chambers v. Int'l Hod Carriers' Building & Common Laborers' Union of Am.*, 52 F. Supp. 978 (D.D.C. 1943) (no "labor dispute" where complaint "concerns the legal right of defendants to manage and control the local union"). For the contrary proposition, the International relies primarily on *Bodecker v. Local Union No. P-46*, 640 F.2d 182 (8th Cir. 1981), but in addition to being factually distinguishable, that case does not provide any explanation for its conclusion that the intra-union dispute at issue was a "labor dispute." *See id.* at 185. Perhaps some intra-union dispute in another context might fall within the purview of the Norris-LaGuardia Act, but the Court concludes that this one does not. Accordingly, the Court has jurisdiction to issue an injunction if one is warranted.

### B. Exhaustion of Internal Remedies

The International also urges the Court to deny or alternatively dismiss or stay this action because the Locals failed to exhaust their internal union remedies as required by Article XXIII of the TWU Constitution. According to the International, exhaustion would entail both appealing the restructuring decision to the International Executive Council and then further appealing to the TWU Convention, which will convened in September. The Locals did appeal to the IEC, although they sued before the IEC ultimately responded unfavorably. They maintain that they cannot effectively appeal to the Convention because the Convention does not meet until six months after the restructuring will be implemented, depriving the Locals of both standing and the practical ability to present their appeal.

Section 101(a)(4) of the Landrum-Griffin Act, 29 U.S.C. § 411(a)(4) (1976), specifically protects the right of a union member to sue his union. The only restriction is that "any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative procedures against such organizations or any officer thereof." This requirement is enforceable by the courts, which, in the absence of exhaustion, may dismiss the suit and award costs and fees. *See Pawlak v. Greenawalt*, 628 F.2d 826, 829-831 (3d Cir. 1980). It is not for the union to enforce against its members, however. *See id*.

"[C]ourts have the discretion to decide whether to require exhaustion of internal union procedures." *Clayton v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 451 U.S. 679, 689 (1981). "In exercising this discretion, at least three factors should be relevant: first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim." *Id.* These factors are not exhaustive, and "a court must look to the reasonableness of imposing [exhaustion] under the circumstances of the situation." *Fulk v. United Transp. Union*, 108 F.3d 113, 117 (7th Cir. 1997) (citing *Lewis v. Local Union No. 100 of the Laborers' Int'l Union of N. Am., AFL-CIO*, 750 F.2d 1368, 1380 (7th Cir.1984)). The district court is "required to exercise its discretion in determining whether the plaintiffs needed to exhaust fully their internal procedures before seeking relief in court." *Id.*

7

Here, the Locals did file an internal appeal, albeit after the lawsuit was filed, and it was denied. Exercising the other internal remedy—bringing the dispute to the Convention—would be futile because the convention meets in September 2013, long after the dissolution would be complete. The International has assured the Locals that they will not be denied the opportunity to appeal to the convention simply because the Locals have been disbanded, but that assurance does nothing to mitigate the practical obstacles to maintaining an appeal on behalf of organizations whose infrastructure and financial resources have been eliminated. Moreover, the fact that the Convention does not meet until six months after implementation of the restructuring would unreasonably delay the Locals' opportunity to seek judicial relief, particularly where their right to relief is pegged to a claim of irreparable damage. *See* 29 U.S.C. § 411(a)(1)(4) (union members may be required to exhaust reasonable hearing procedures (*but not to exceed a four-month lapse of time*)). Thus, the International's exhaustion procedures, in this context, are inadequate to provide the relief sought and would unreasonably delay hearing the claim before the challenged action is completed. Requiring the Locals to wait until months after the challenged restructuring takes place to perfect an internal appeal—which they would be hard-pressed to effectively pursue after being dissolved—defies reason. Under these circumstances, the Court sees no reason to require further exhaustion that what has been undertaken already.

## II.     Temporary Restraining Order

To justify a preliminary injunction, including a TRO, "the plaintiffs must show that they are likely to succeed on the merits, that they are likely to suffer irreparable harm without the injunction, that the harm they would suffer is greater than the harm that the preliminary injunction would inflict on the defendants, and that the injunction is in the public interest." *See Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010). "These considerations are interdependent: the

greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Id*.

The Court begins by examining whether the Locals demonstrate a likelihood of success on the merits. "[T]he threshold for establishing likelihood of success is low." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). The Locals must show simply that they have a "better than negligible" chance of winning on the merits. *Id*.

Despite the low bar, the Locals are unable to clear it because of the deference owed to the International in its interpretation of its own constitution. The courts "defer to a union's interpretation of its own constitution so long as the interpretation is not unreasonable." *Fulk v. United Transp. Union*, 160 F.3d 405, 407 (7th Cir. 1998); *Maher v. International Brotherhood of Electrical Workers*, 15 F.3d 711, 714 (7th Cir. 1994); *Air Wisconsin Pilots Protection Committee v. Sanderson*, 909 F.2d 213, 218 (7th Cir. 1990) ("*AWPPC*"). Most courts require, and the Seventh Circuit has likewise suggested, that only "*patently* unreasonable" interpretation can be rejected by the courts. *AWPPC*, 909 F.2d at 218; *see Hughes v. Bricklayers and Allied Craftworkers Local No. 45*, 386 F.3d 101, 106 (2d Cir. 2004); *Executive Bd. of Transport Workers Union of Philadelphia, Local 234 v. Transport Workers Union of America, AFL–CIO*, 338 F.3d 166, 169-170 (3d Cir. 2003); *James v. Int'l Bhd. of Locomotive Engineers*, 302 F.3d 1139, 1145 (10th Cir. 2002); *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1197 (11th Cir. 1999); *Dow v. United Bhd. of Carpenters and Joiners of Am.*, 1 F.3d 56, 58 (1st Cir. 1993). The deference to a union's reasonable interpretation of its own constitution "is predicated on a federal policy of noninterference in internal union affairs." *Fulk*, 160 F.3d at 408; *Local 657, United Bhd of Carpenters v. Sidell*, 552 F.2d 1250 (7th Cir.1977).

TWU concedes that there is no specific provision of the TWU Constitution that grants the International Union the authority to take the actions it plans here. Instead it relies on "many facets of the TWU Constitution," primarily those that position the local unions as subordinate to and under the control of the International, for the source of its power. The Constitution vests the power to charter and dissolve local unions in the IEC. The International Constitution also regulates the structure and functions of local unions extensively, including the size and composition of their governing bodies, the number of and duties of local officers, election procedures, and powers of local unions. The Constitution also gives the IEC the power to place local unions in trusteeship, to revoke local charters, and to dissolve local unions. The International argues that these powers, and the ultimate authority invested in the International President and the IEC, permit the International to merge and dissolve local unions as needed to effectuate its legitimate objectives.

The existing case law, though not extensive, supports the International's expansive interpretation of its powers with respect to locals. A restructuring of locals—specifically, a transfer of members between existing Locals —absent an "affirmative grant" of that power was upheld in *Local 507, Transport Workers Union of America, AFL–CIO v. Transport Workers Union of America, AFL–CIO*, 2001 WL 92161 (D. Mass. 2001). There the Court was faced with the TWU Constitution that is at issue here. And in *Executive Bd. of Transport Workers Union of Philadelphia, Local 234 v. Transport Workers Union of America, AFL–CIO*, 338 F.3d 166 (3d Cir. 2003), the court held that the International Union was not patently unreasonable in interpreting its constitution to provide that the local president had primary authority over certain decisions (e.g. hiring and firing staff) subject only to the local union's board review of those decisions for "reasonableness." There was no unambiguous language in the Constitution that

gave the powers to either the local president or the board, so the International Union's interpretation was upheld out of deference, even if that interpretation was not required by the language of the Constitution. *Id.* at 175. Although the Locals attempt to distinguish these cases on the facts, they do not point the Court to authority supporting their contention that the International has taken an unreasonably expansive view of its powers with respect to the locals.

The Locals argue that the International's interpretation in this case is not entitled to deference and is unreasonable because it violates express provisions of the Constitution. The Court is inclined to agree that actions that contrary to constitutional mandates would indeed be "patently unreasonable." *See Local 234*, 338 F.3d at 170 ("we have noted that an interpretation that conflicts with the 'stark and unambiguous' language of the Constitution or reads out of the Constitution important provisions is a 'patently unreasonable' interpretation"). But despite their efforts, the Locals have not shown any inconsistency with express provisions of the Constitution. The Court reviews their arguments in turn:

- Article V § 4.[2] According to the Locals, this provision requires a "due process hearing" any time before a local union's charter can be suspended or revoked. The International Union submitted evidence that this provision applies when it imposes a trusteeship over a local, and the Locals have no contradictory evidence. In any case, the plain language of provision

---

[2] "In the event the International President shall have reason to believe that any Local Union is failing to comply with any provision of the Constitution or conducts its affairs in a manner which is detrimental to the interests of the Union, he/she may institute proceedings against the Local Union, with due notice of hearing in writing delivered to the Local President and to the Local Financial Secretary-Treasurer, specifying the section or sections of the Constitution violated or the nature of conduct, before the International Executive Council, or a subcommittee thereof, designated either by the Council or by the International Administrative Committee. Upon the basis of the hearing the International Executive Council is authorized to render a decision, dismissing the charges, suspending or revoking the charter of any such Local Union, or directing such other action as may be necessary to secure compliance with the Constitution, or otherwise to protect and preserve the effectiveness and the best interests of the Union."

shows that certain procedures including a hearing (the outcome of which can be revocation of the local charter) are required when the International institutes proceedings against a local for "failing to comply with any provision of the constitution" or "conduct[ing] its affairs in a manner which is detrimental to the interests of the Union." There were no such accusations here; the International has never claimed that its reorganization was based upon any misconduct by leaders or members of the Locals or anything other than purely administrative concerns. That the TWU Constitution provides a hearing prior to making a determination that a Local has engaged in misconduct does not suggest that a hearing is required before the International can reorganize locals based on administrative or financial considerations. The Court therefore fails to discern the relevance of this provision, let alone how the International could have "violated" it by adopting its restructuring plan.

• Article VIII § 8(a).[3] This provision allows the IEC to revoke a local charter or require a merger when a local union's membership falls below a point where it can "properly perform its functions." It is uncontested that, at present, the Locals' numbers remain robust; according to the Locals, then, the IEC cannot dissolve them. Even if the merger here can be viewed as "revocation" of the existing charters (which is far from established), though, the merger does not violate the express language of the provision, which does not state that a Local's charter *cannot* be revoked unless membership has declined to the point that the Local is impaired. The Locals interpret the express grant of authority to revoke a charter based on reduced membership to preclude that action, but the Union cannot show that its reading of this

---

[3] "Should the number of good standing members in any Local Union become reduced to the point that, in the opinion of the International Executive Council, the Local can no longer properly perform its functions, the International Executive Council may revoke the charter of such Local, or require it to merge with another Local, or take such other action as it deems advisable."

provision as an exclusive basis for revocation is required over the International's view that it also may restructure based on administrative and financial concerns. The International's view that in expressly permitting revocation on this basis the Constitution does not preclude revocation on any other basis is not "patently unreasonable."

- Article VIII § 9.[4] This section empowers the IEC to revoke a charter from a local that is "dishonest or culpably negligent" with respect to its assets. Again, that is not the case here, and the Locals again insist that this provisions is "violated" if revocation (again, insofar as that is a fair assessment of what will occur here) happens for other reasons. The International again says that this is not a limiting provision and that it can act in any way consistent with its powers whether there is specific authorization or not. The International's position is not patently unreasonable.

- Article VI, § 4.[5] This provision authorizes audits and financial investigations of local unions by the International Secretary-Treasurer; it does not say anything about the International's powers to merge or dissolve local unions. Nor does it impose any conditions or restrictions on the exercise of the financial inspection powers. The Locals' argument is apparently that the International was required to use its audit authority to show that the locals were insolvent, because financial considerations factored into the restructuring decision. But to say that the International's restructuring plan violates a provision authorizing audits, or that the

---

[4] "Any Local Union which is dishonest, or culpably negligent or wasteful in its supervision, collection, expenditure, or control of any assets or funds shall be subject to the revocation of its charter or to such other action by the International Executive Council as the Council deems adequate and appropriate under the circumstances. Such conduct on the part of a Local Union is also subject to proceedings instituted by the International President pursuant to SECTION 4 of ARTICLE V."

[5] "He/she shall have the power to inspect and audit the financial records of each Local Union. He/she shall have the power to establish the rules and standards for any inspection and audit of the financial records of a Local Union, including one conducted pursuant to Article XVI Section 4."

existence of audit power implies that Locals may be dissolved only on a showing of insolvency, is not itself a convincing argument and does not come close to compelling a conclusion that the International's contrary view is unreasonable.

- Article XII § 1.[6] This provision relates to the structure of local unions. The Locals argue that International Union's interpretation of the Constitution is inconsistent with this provision because it ignores a mandate that the International function through local unions and vitiates the purpose of locals to represent members in localized geographic areas "within a city or other area." The International responds that the new "super local" is defined by geographic scope (essentially, all airports except Tulsa) and retains the trade-specific character that defines the current locals. The International further points out that existing plaintiff locals cover very wide geographic areas already (e.g. NYC-Boston-Puerto Rico; Dallas-Austin-Denver). Although the Court agrees that a nationwide "local" union is rhetorically counterintuitive, there is nothing in the language of § 1 that requires the alternate interpretation posed by the Locals, especially where geographically expansive local unions are already in place. How many cities or states may a "local" cover before it is no longer a "local"? The plaintiffs do not tell us. Moreover, Article XIV of the constitution makes clear that large locals are contemplated (for instance, by pegging the size of the local executive board to the size of the local membership, including for locals of more than 1,500 members).

There is also the larger question of whether creating a "super local" vitiates the constitution's mandate that "the membership of the [TWU] shall function through Local Unions." But the "membership," as far as the record shows, will still be enrolled in a local union,

---

[6] " The membership of the Transport Workers Union of America shall function through Local Unions. A Local Union shall consist of the members within a city or other area specified by the International Executive Council, organized under a charter granted by the Transport Workers Union of America."

with the same elected offices and the same basic functions as the existing locals. Therefore, the Locals have not shown that the International's interpretation of its powers to merge and dissolve locals is unreasonable with reference to the constitutional requirement that the membership function through local unions.

•      Article XIV §§ 1-3.[7] These provisions establish how a local union can be chartered and provide for IEC approval of any chartering or dissolution of a local. The Locals argue that the International's reorganization plan violates these provisions because the International, not frontline workers, created the new Local 591, and because, they say, "good cause" is needed to dissolve a local. The Locals do not explain the origins of its "good cause" standard, and the Court discerns none. Indeed, the provision says nothing at all about the circumstances under which a local can be dissolved, other than requiring IEC consent (which occurred here). The Locals fall short of establishing any violation of these constitutional provisions.

The Union has not made a persuasive case that it can show that the reorganization plan conflicts with any express provision of the TWU Constitution. They are left, then, to argue that absent express provisions authorizing the actions, the International lacks the authority to merge, and thus effectively dissolve, local unions. But this is itself a matter of constitutional interpretation: whether the powers of the International President and the IEC limited to those

---

[7] "SECTION 1. Ten or more persons eligible for membership in the International Union shall constitute a Local Union upon receipt of a charter from the International Secretary-Treasurer under the terms herein provided. SECTION 2. Upon approval of the charter application by the International Administrative Committee, the International Secretary-Treasurer shall issue to the applicants a Local Union charter which shall contain such provisions as the International Union may require; he/she shall also deliver to said applicants one Local seal and such other initial supplies as may be necessary to conduct the affairs of the Local Union. The grant of such charter shall be subject to the subsequent approval of the International Executive Council. SECTION 3. No Local Union shall be dissolved, except with the approval of the International Executive Council.***"

specifically enumerated, or whether they are authorized to act in any manner consistent with the powers. Principles of deference require this Court not to answer that question where the International's interpretation is plausible. *See Dow*, 1 F.3d at 60. And it is. The Locals' argument is a variation on the familiar canon that "*expressio unius est exclusion alterius*," inferring from the provision of some express provisions governing dissolution of locals in some contexts a negative implication that dissolution is permitted in no other. The Locals confirmed at the hearing that this is their view of the International Constitution. But as the Supreme Court has repeatedly noted, "[t]he force of any negative implication . . . depends on context. . . . [T]he *expressio unius* canon does not apply unless it is fair to suppose that [the legislator] considered the unnamed possibility and meant to say no to it . . . and that the canon can be overcome by contrary indications that adopting a particular rule or statute was probably not meant to signal any exclusion." *Marx v. General Revenue Corp.*, 133 S. Ct. 1166, 1175 (2013) (internal quotation marks and citations omitted).

Here, as the International argues, the context is a constitution that provides nearly plenary powers to the International to create and regulate local unions, subject only to some due process requirements when taking action predicated on alleged misconduct or violations of the constitution or other union rules. The International's constitution as a whole leaves no doubt that locals are subordinate to, and exist only to serve the purpose of, promoting the interests of the International and its ability to represent its members. There is nothing in the text of the constitution that warrants the inference urged by the Locals—namely, that once it has created a local, the International is powerless to dissolve that local outside the very limited situations expressly described in the constitution. To the contrary, the clear import of the document is to provide broad powers to the International Executive Committee and the International officers to

16

take actions they deem to be in best interests of the International and its members. It is anything but unreasonable, then, for the International to reject the interpretation advocated by the Locals in favor of the view that the International's authority extends to dissolving local unions for reasons other than those expressly described in the International's constitution. *Cf. Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 102 (2002) (O'Connor, J., dissenting in 5-4 opinion) (*expressio unius* canon has reduced force when deference is owed to agency interpretation). That the Locals have a colorable interpretation—even one that a court deems to be stronger than that offered by the International—is irrelevant.[8] The question on the merits is not who has the better of the interpretive argument, but whether the International's interpretation is "patently unreasonable" and so unworthy of deference. It plainly is not.

Beyond disputing the reasonableness of the TWU's constitutional interpretation, the Locals have halfheartedly argued (at the hearing, although not in their briefs) that the International's reorganization was done in bad faith. Showing bad faith is an alternative showing that the International's action is patently unreasonable. *E.g., Dunn*, 193 F.3d at 1197 (union's interpretation of its own governing documents is subject to judicial review only if "patently unreasonable" *or* adopted in bad faith). But the Locals were unable to supply any evidentiary basis for that assertion, and their arguments were directed at their disagreement with the International's stated reasons for initiating the reorganization. Disagreement falls far short of "bad faith." *See Local No. 48, United Broth. of Carpenters and Joiners of America v. United Broth. of Carpenters and Joiners of America*, 920 F.2d 1047, 1054 (1st Cir. 1990) (bad faith could be shown based on actions that are "contrary to the International's best interests," taken "out of self-interest," or are "palpably unconscionable or outrageous . . . on the part of union

---

[8] The Court does not intend to suggest that it finds the Locals' interpretation of the International Constitution more persuasive than that offered by the International. It does not.

officials even if arguably in the best interests of the union"). Without more, the Court cannot conclude that there is any likelihood of the Locals proving bad faith.

Finally, apart from the issue of the International's authority to implement this reorganization, the Locals also claim that the International violated its duty of fair representation. However, TWU, backed by ample authority, argues that the duty of fair representation pertains to the union's duty to represent its members fairly *vis à vis* the employer in contract negotiation and contract enforcement, but it does not apply to intra-union affairs. That is essentially the position taken by the Seventh Circuit in *Distler v. United Mine Workers of America*, 711 F.2d 76 (7th Cir. 1983), where it explained that "unfair conduct which . . . would touch on neither the negotiation or ratification nor the enforcement of the collective bargaining agreement . . . is not actionable under 'fair representation' principles." *Id*. at 79. The Locals' five lines of argument about fair representation do not cite any cases to the contrary (they cite only to cases explaining the duty generally). Accordingly, the Court finds that there is not a better than negligible chance of success on the merits of a fair representation claim, to the extent the Locals have not abandoned that claim by failing to support it.

* * *

Because—irrespective of the other injunction factors—the Locals have not established a likelihood of success on the merits, the motion for a temporary restraining order is denied. The analysis relevant to consideration of the Locals' request for a preliminary injunction, moreover, is no different than the analysis required with respect to the request for a temporary restraining order. As such, this opinion could stand as the Court's ruling on the preliminary injunction motion. Because briefing on the temporary restraining order (and the Court's consideration thereof) was necessarily expedited, however, and because the Locals did not have an opportunity

to reply to the International's response brief, the Court grants the Locals the leave they requested to file any further brief in support of their motion for a preliminary injunction by Tuesday, March 19. Any response by the International will be due Wednesday, March 20. A hearing on the preliminary injunction motion will be held on Thursday, March 21, 2013, at 10:30 a.m. If either party anticipates the presentation of any evidence at the hearing (as distinguished from any additional materials submitted with further briefs), the Court must be notified by Tuesday, March 19. The Court will issue its ruling on the Locals' request for a preliminary injunction on March 21, following the hearing.[9]

Entered: March 15, 2013

John J. Tharp, Jr.
United States District Judge

---

[9] This date, preceding the effective date of the International's planned restructuring of the Locals, is set at the request of the Locals.